Lisa Holder, Esq. – State Bar No. 212628
LAW OFFICE OF LISA HOLDER
P.O. Box 65694
Los Angeles, CA 90065
Telephone: (323) 683-6610
Email: lisaholder@yahoo.com

Sanjukta M. Paul, Esq. – State Bar No. 243861
LAW OFFICE OF SANJUKTA M. PAUL
1475 Echo Park Ave.
Los Angeles, California 90026
Telephone: (213) 482-9363
Facsimile: (213) 250-2846
sanjukta@sanjuktalaw.com

Attorneys for Plaintiff
Abdul-Jabbar Gbajabiamila

FILED
2010 APR -9 AM 11:09
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL-JABBAR GBAJABIAMILA,<br><br>Plaintiff,<br><br>vs.<br><br>ABERCROMBIE & FITCH, INC.;<br>HOLLISTER CO.; and DOES 1<br>through 50, inclusive,<br><br>Defendants. | CASE NO:<br><br>CASE FILED:<br>'10 CV 0740 IEG   WMc<br><br>**COMPLAINT FOR DAMAGES;**<br>**DEMAND FOR JURY TRIAL**<br><br>1. **RACE DISCRIMINATION (42 U.S.C. § 2000e et seq.) – DISPARATE TREATMENT**<br><br>2. **RACE DISCRIMINATION (42 U.S.C. § 2000e et seq.) – DISPARATE IMPACT**<br><br>3. **NATIONAL ORIGIN DISCRIMINATION (42 U.S.C. § 2000e et seq.)**<br><br>4. **RETALIATION FOR OPPOSING AN UNLAWFUL EMPLOYMENT PRACTICE (42 U.S.C. § 2000e et seq.)**<br><br>5. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Abdul-Jabbar Gbajabiamila brings this action against Abercrombie & Fitch, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* as amended and for wrongful termination in violation of public policy under the laws of California. Plaintiff has exhausted all his administrative remedies. Plaintiff now brings this case to vindicate his right to be free from race discrimination in the workplace.

## JURISDICTION AND VENUE

1. This case arises under the laws of the United States and presents a federal question within this Court's jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

2. Plaintiff's claims for injunctive and equitable relief are authorized by 42 U.S.C. § 2000e-5(g).

3. Venue lies in the Southern District of California, the judicial district in which the claim arose, pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff's state law claims for relief are within the supplemental jurisdiction of the Court, as authorized by 28 U.S.C. § 1367. Each of these state claims arises out of the same set of operative facts as do the aforesaid claims brought under the laws of the United States and form part of the same case or controversy.

## PARTIES

5. Plaintiff Abdul-Jabbar Gbajabiamila ("Plaintiff") is an African-American man, of Nigerian descent, residing in the County of Los Angeles, State of California. At all times during which the events described in this complaint took place, plaintiff resided in the County of San Diego, State of California, within the judicial district in which this claim is brought.

6. At all relevant times, Defendant Abercrombie & Fitch, Inc., was a corporation doing business and employing individuals in the County of San Diego, State of California, and within the judicial district in which this claim is brought.

7. At all relevant times, Hollister Co. was a division of Abercrombie &

- 1 -

Fitch, Inc., and did business and employed individuals in the County of San Diego, State of California, and within the judicial district in which this claim is brought.

8. The true names and capacities of Defendants, DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff as herein alleged.

9. Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean that all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers and tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except where alleged to the contrary.

## FACTUAL ALLEGATIONS

10. Plaintiff Abdul-Jabbar Gbajabiamila ("Abdul") is and at all relevant times has been male and African-American.

11. Plaintiff was born in Los Angeles, California, in 1981, to parents who had emigrated to the United States from Nigeria.

12. Plaintiff was employed by Defendants Abercrombie & Fitch, Inc. (hereinafter "Abercrombie" or "the company"), in its Hollister Co. (hereinafter "Hollister") division of stores, from February 22, 2007, through June 12, 2007.

13. Plaintiff was hired to work in a Hollister Co. store in El Cajon, California. Specifically, plaintiff was hired into the Manager in Training position.

14. Plaintiff's hair is black, coarse, and very curly. In these and other

- 2 -

1 physical respects, plaintiff's hair is typical of Sub-Saharan African hair.

2   15.   At the time that plaintiff was hired, he wore his hair in an "Afro" hairstyle of approximately one inch in length.

   16.   At the time that plaintiff was hired, he was told by an Abercrombie representative (Tanner Cole) that he would be expected to abide by Abercrombie's/Hollister's "Look Policy." During the interview and hiring process, plaintiff was never told that wearing one's hair in "corn-rows" violated the Look Policy.

   17.   In or around April 2007, Abdul was provided a copy of Abercrombie's/Hollister's Look Policy ("the policy") contained within Abercrombie's/Hollister's Employee Handbook.

   18.   The policy stated that Abercrombie employees were expected to fashion their hair in a style that was "clean, natural, and classic." This was the sole provision in the policy regarding hair grooming. The only other provision in the policy that conceivably related to hair grooming was a statement indicating that the preferred look or style was consistent with the Southern California "surfer look."

   19.   Abercrombie/Hollister also maintains a "Look Book" comprised of photographs of its sales people. The Look Book displays approximately 36 head shots – 11 of the photographs depict white males, 5 of the photographs depict African-American males, and the remainder of the photographs depict women of both African-American and European descent, with the exception of two photographs of males of Asian and mixed race descent. The white males and the males of Asian and mixed-race are depicted with hairstyles of varying lengths and textures. Specifically, the hairstyles worn by the white males consist of hair lengths ranging from an extremely short crew cut, to mid-length spiked hair, to lengthy hair flowing to the middle of the neck. The hairstyles worn by the white, Asian, and mixed race males tend to reveal the texture of the hair, including textures that are spiky, straight, wavy and curly. The five (5) African-American males are all depicted wearing an extremely short cropped hairstyle, commonly known as a

1 "fade". The fade consists of a closely shaven hairstyle that does not display the natural texture of the hair. Thus, in the "Look Book," all black males with coarse and kinky hair sport hairstyles that conceal the texture of their hair, while non-black males wear hairstyles that reveal the texture of their hair.

20. During Abdul's employment period, Abercrombie/Hollister also maintained a website replete with images of models displaying the Abercrombie "look". Approximately twenty (20) of the images depict males. All of the males are white with hairstyles of varying lengths and textures.

21. During Abdul's employment, at the Hollister store at which he worked, there were white male employees who sported hairstyles that required hair gel, as well as mid- to shoulder-length hairstyles. Further, there were white male employees with tightly curled hair, wearing their hair in a bushy hair style, two inches or more in length. There was also at least one male employee of mixed-race descent (white and African-American) with chemically straightened hair.

22. In mid-May, 2007, plaintiff styled his hair in corn-rows for his graduation ceremony from San Diego State University. Three days after his graduation, on or about May 22, 2007, plaintiff reported for work with his hair in neatly groomed corn-rows.

23. On or about May 23, 2007, plaintiff's immediate supervisor, Store Manager Erik Ryan, who is white, recommended plaintiff remove his corn-rows because he was uncertain whether corn-rows were compliant with the Look Policy. Plaintiff informed his manager that the Look Policy simply required that employees style their hair in a fashion that was "clean, natural, and classic" and did not prohibit the corn row hairstyle. Plaintiff's manager said that he would refer the matter to the District Manager.

24. On or about May 26, 2007, District Manager for Abercrombie, Shaylyn Woolf, who is white, told plaintiff that he had to remove his corn-rows to comply with the Look Policy. Plaintiff requested written documentation that his hair-style was not in compliance. Ms. Woolf assured him that she would provide

- 4 -

1 documentation.

25. On or about June 8, 2007, Ms. Woolf and Tony Park, Director of Human Resources for Hollister Co.'s West Coast stores, held a telephonic meeting with plaintiff. Mr. Park stated that corn-rows were not an acceptable hair-style under the terms of the Look Policy. Plaintiff again requested a copy of the written policy prohibiting corn-rows. At no point did Abercrombie or its representatives provide plaintiff with any written policy or document stating that corn-rows were an unacceptable hair-style under company policy. During this phone call, Mr. Park suggested that plaintiff think about whether he was willing to take out his corn-rows.

26. On or about June 12, 2007, plaintiff arrived at the store before the start of his shift wearing a hat. Ms. Woolf asked him to remove the hat. Seeing that he still had his hair in corn-rows, Ms. Woolf notified Mr. Park of this fact by telephone.

27. On the same day, Mr. Park again spoke to plaintiff by telephone, and told him to take out his corn-rows. Mr. Park advised Abdul that he would allow him to think the matter over until his next work shift commenced. Plaintiff responded that he did not need the additional time to think about the matter, as he did not believe he was non-compliant with the Look Policy, and he did not intend to change his hairstyle.

28. On or about June 12, 2007, Ms. Woolf terminated plaintiff's employment.

29. Abdul was never provided a copy of the "Look Book" during his employment with Abercrombie.

30. At no point between plaintiff's date of hire and mid-May, 2007, was plaintiff ever informed, advised, or counseled that wearing one's hair in "corn-rows" would violate Abercrombie's Look Policy or any other grooming policy in effect within the company.

31. On several occasions prior to his adoption of the corn-row hairstyle,

- 5 -

however, Abdul was counseled by fellow managers that he should reduce the size of his Afro to conform to the shorter "fade" hairstyle that conceals the texture of the hair.

32. At all relevant times, Plaintiff was an employee as defined by 42 U.S.C. 2000e(f), prohibiting discrimination and retaliation in employment on the basis of race.

33. At all relevant times, Defendants were employers within the meaning of 42 U.S.C. 2000e(a), and, as such, were barred from discriminating and retaliating in employment decisions on the basis of race.

34. Plaintiff filed a written complaint with the Department of Fair Employment and Housing ("DFEH") on September 19, 2007.

35. On or around September 26, 2007, the DFEH filed a charge on Plaintiff's behalf with the Equal Employment Opportunity Commission ("EEOC") (Case No. 37AA713433).

36. On September 15, 2007, The DFEH issued an accusation against Abercrombie & Fitch, Inc., alleging that it had violated Government Code sections 12940 *et seq* by terminating plaintiff's employment. The FEHC heard the case (No. E 200708-D-0364-00e) on April 28-29 and May 4, 2009, in San Diego, California. The FEHC issued its final decision on October 1, 2009, finding that Abercrombie & Fitch had not violated the FEHA. The FEHC's power to order reconsideration expired on November 2, 2009.

37. As set forth above, plaintiff has exhausted all his administrative remedies.

### FIRST CAUSE OF ACTION
### RACE DISCRIMINATION (42 U.S.C. § 2000e) – DISPARATE TREATMENT
### (Against All Defendants)

38. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 37, inclusive, as though fully set forth herein.

39. Defendants' actions violated Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e-2.

40. Defendants discriminated against plaintiff in the terms and conditions of his employment by requiring him, because of and in virtue of his race, to adhere to onerous and unnecessary personal grooming restrictions and requirements relating to plaintiff's hair-style. These grooming restrictions and requirements were not necessary for, or reasonably related to, the performance of plaintiff's job duties.

41. Defendants discharged plaintiff from his employment because of his race.

42. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of wages, earnings, and other employment benefits, in amounts to be proven at trial.

43. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at the time of trial.

44. Plaintiff has incurred and continues to incur attorneys' fees, and costs of suit, in an amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION
## RACE DISCRIMINATION (42 U.S.C. § 2000e) – DISPARATE IMPACT
### (Against All Defendants)

45. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 37, inclusive, as though fully set forth herein.

46. Defendant's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

47. Defendants discriminated against African-American employees in the terms and conditions of their employment by enforcing a personal grooming policy which, on its face and as-applied, disparately impacted African-Americans, requiring them to adhere to onerous and unnecessary personal grooming restrictions and requirements while allowing non-African-American employees far more

latitude in personal grooming and hair-style choices. These grooming restrictions and requirements were not necessary for, or reasonably related to, the performance of defendants' employees' job duties.

48. African-American employees were required to adhere to the foregoing grooming restrictions and requirements as a condition of their employment with defendants.

49. Because plaintiff refused to adhere to defendants' discriminatory policy, as alleged in ¶¶ 47-48, defendants terminated plaintiff from his employment

50. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of wages, earnings, and other employment benefits, in amounts to be proven at trial.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at the time of trial.

52. Plaintiff has incurred and continues to incur attorneys' fees, and costs of suit, in an amount according to proof at the time of trial.

### THIRD CAUSE OF ACTION

### NATIONAL ORIGIN DISCRIMINATION (42 U.S.C. § 2000e)

### (Against All Defendants)

53. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 37, inclusive, as though fully set forth herein.

54. Defendant's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

55. Defendants discriminated against plaintiff in the terms and conditions of his employment by requiring him, because of and in virtue of his national origin (Nigeria), to adhere to onerous and unnecessary personal grooming restrictions and requirements. These grooming restrictions and requirements were not necessary for, or reasonably related to, the performance of plaintiff's job duties.

56. Defendants discharged plaintiff from his employment because of his national origin (Nigeria).

57. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of wages, earnings, and other employment benefits, in amounts to be proven at trial.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at the time of trial.

59. Plaintiff has incurred and continues to incur attorneys' fees, and costs of suit, in an amount according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### Retaliation for Opposing an Unlawful Employment Practice

### (Against All Defendants)

60. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 37, inclusive, as though fully set forth herein.

61. Defendant's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

62. Defendants discriminated against African-American employees in the terms and conditions of their employment by enforcing a personal grooming policy which, on its face and as-applied, disparately impacted African-Americans, requiring them to adhere to onerous and unnecessary personal grooming restrictions and requirements while allowing non-African-American employees far more latitude in personal grooming and hair-style choices. These grooming restrictions and requirements were not necessary for, or reasonably related to, the performance of defendants' employees' job duties.

63. African-American employees were required to adhere to the foregoing grooming restrictions and requirements as a condition of their employment with defendants.

64. Plaintiff opposed the defendants' discriminatory policy, as alleged in ¶¶ 62-63, by refusing to adhere to it and by vocally questioning its logic and fairness, in several interactions relating to the policy between plaintiff and upper managers and representative of defendants.

65. Defendants terminated plaintiff's employment because he opposed defendants' discriminatory grooming policy.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of wages, earnings, and other employment benefits, in amounts to be proven at trial.

67. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at the time of trial.

68. Plaintiff has incurred and continues to incur attorneys' fees, and costs of suit, in an amount according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### (Against All Defendants)

69. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 30, inclusive, as though fully set forth herein.

70. Defendants terminated Plaintiff's employment on grounds that violate California public policies prohibiting discrimination on the basis of race and color against employees, and prohibiting retaliation against employees who oppose race discrimination in employment, including the anti-discrimination and anti-retaliation provisions of FEHA (Government Code §§12940(a), (h), and (k)), and Article I, Section 8 of the California Constitution.

71. Defendants terminated plaintiff's employment on grounds contrary to the foregoing public policies, because he refused to adhere to, and opposed, defendants' discriminatory employee grooming policy.

72. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

73. As a proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in an amount according to proof at the time of trial.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer loss of wages, earnings, and other employment benefits, in amounts to be proven at trial.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in an amount according to proof at the time of trial.

76. Plaintiff has incurred and continues to incur attorneys' fees, and costs of suit, in an amount according to proof at the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants, and each of them, as follows:

1. For an injunction requiring defendants to modify their grooming policy so that it does not disparately impact African-Americans and other individuals of African origin;
2. For past and future lost income and benefits;
3. For emotional distress damages;
4. For all other special and general compensatory damages according to proof;
5. For punitive damages;
6. For prejudgment and post-judgment interest as available by law; and

7. For such other and further relief as this Court may deem just and proper.

DATED: April 7, 2010

**LAW OFFICE OF LISA HOLDER**

By: _____
Lisa Holder

Attorney for Plaintiff
ABDUL-JABBAR GBAJABIAMILA

DATED: April 7, 2010

**LAW OFFICE OF SANJUKTA M. PAUL**

By: _____
Sanjukta Paul

Attorney for Plaintiff
ABDUL-JABBAR GBAJABIAMILA

### PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff Abdul-Jabbar Gbajabiamila hereby demands a trial by jury.

DATED: April 7, 2010

**LAW OFFICE OF LISA HOLDER**

By: _____
Lisa Holder

Attorney for Plaintiff
ABDUL-JABBAR GBAJABIAMILA

DATED: April 7, 2010

**LAW OFFICE OF SANJUKTA M. PAUL**

By: _____
Sanjukta Paul

Attorney for Plaintiff
ABDUL-JABBAR GBAJABIAMILA

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Abdul Jabbar Gbajabiamila

## DEFENDANTS
Aberecrombie and Fitch Stores Inc., Hollister Co.

FILED 2010 APR -9 AM 11:09
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff: Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Office of Lisa Holder, P.O. Box 65694, Los Angeles, CA 90065
Law Office of Sanjukta M. Paul, 1475 Echo Park Ave., Los Angeles, CA 90026

Attorneys (If Known)

'10 CV 0740 IEG WMc

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title VII      42 USC 2000

Brief description of cause:
Race Discrimination and National Origin Discrimination in Employment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ DAMAGES According to Proof

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 04/07/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

